# Buchanan

**Geoffrey F. Sasso**
215 665 3918
Geoffrey.sasso@bipc.com

700 Alexander Park, Suite 300
Princeton, NJ  08540-6347
T 609 987 6800
F 609 520 0360

August 15, 2025

**VIA ECF**

Honorable Edward S. Kiel, U.S.D.J.
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

> **Re:**    ***Grays Harbor LLC et al. v. Prime Digital Ads et al.* (25-cv-13680-ESK)**

Dear Judge Kiel:

Buchanan Ingersoll & Rooney PC represents Defendants, Mitchell Richler ("Richler") and Snowy Owl Technologies, Inc. ("Snowy Owl"), and Stradley Ronon Stevens & Young, LLP represents Defendant, Prime Digital Ads, LLC ("Prime Digital").

In accordance with this Court's August 12, 2025 Order, Defendants submit this joint Letter Brief seeking dissolution of the temporary restraints issued pre-removal by the Superior Court of New Jersey at the request of Plaintiffs, Grays Harbor LLC d/b/a Gray Harbor and Brett Houck (collectively "Plaintiffs").

## PRELIMINARY STATEMENT

Defendants seek dissolution of *ex parte* temporary restraints entered without notice to Defendants based on allegations of mere financial harm in a lawsuit where jurisdiction is absent. As set forth below, Plaintiffs surreptitiously procured these restraints in order to prevent Defendants from opposing their Order to Show Cause and tie Defendants to an improper forum. Plaintiffs may not avail themselves of injunctive relief under such circumstances, and it is not appropriate for Plaintiffs to use an injunction to safeguard assets that they ***may*** have a claim to if successful at trial at the expense of the Defendants. As explained in more detail below,  Plaintiffs did not (and cannot) meet this high standard, the state court erred in entering temporary restraints, and those restraints should be dissolved.

## PRE-REMOVAL PROCEDURAL HISTORY

Plaintiffs filed a Complaint and Order to Show Cause on May 30, 2025, in the Superior Court of New Jersey – Cape May County. *See* Plf. Compl. (Dkt. No. 1, Ex. A). The Complaint

August 15, 2025
Page - 2 -

asserts nine claims against Defendants, as well as a claim for injunctive relief– including temporary restraints - under New Jersey Court Rule 4:52-1 against Defendant, Impact Tech, Inc. ("Impact"). *See id. generally.* Plaintiffs' restraints (both temporary and permanent) sought to freeze all accounts held by Impact that are under the control of Defendants. *See id.* On June 27, 2025, the New Jersey state court granted Plaintiffs' request for temporary restraints. Plaintiffs took no action to serve Defendants with process until nearly a month after entry of these restraints.

## LEGAL ARGUMENT

Whenever an action is removed to a district court, "all injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450; *see also Harper v. Gloval Geophysical Services, Inc.*, No. 10-cv-1540, 2011 WL 94210, at *3 (W.D. Pa. 2011). The law has entrusted the power to ... dissolve [a preliminary] injunction to the discretion of the trial court in the first instance, and not to the appellate court...." *Glasco v. Hills*, 558 F.2d 179, 180 (3d Cir. 1977). Whether a preliminary injunction should be dissolved requires exercise of the Court's sound discretion. *See Kochler v. Coal Co. v. Marshall*, 505 F. Supp. 156, 157 (E.D.Pa. 1981).

The standard that the district court must apply when considering a request to dissolve an injunction is "whether the movant has made a showing that changed circumstances warrant the discontinuation of the order." *Twp. of Franklin Sewerage Auth. v. Middlesex County Utils. Auth.*, 787 F.2d 117, 121 (3d Cir.1986). The Third Circuit has held that reconsideration is appropriate where (1) the moving party demonstrates an intervening change in the controlling law; (2) additional facts are made available, which were not available when the court first considered the issue; or (3) there is a need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A party only needs to demonstrate one of the grounds to establish that reconsideration is appropriate. *See id.*

Here, the state court made a clear error of law in issuing the temporary restraints *ex parte* and without any hearing or opportunity by Defendants to be heard. The state court also erred because Plaintiffs failed to satisfy either of the two primary elements required to support the entry of a preliminary injunction. At bottom, dissolving the temporary restraints is required to prevent a manifest injustice to Defendants.

A.     **Temporary Restraints Were Improperly Entered in the State Court and Plaintiff Failed to Comply with the Court Order Below**

To date, Plaintiffs' only attempt to justify their obtaining *ex parte* restraints is to matter-of-factly state, "Plaintiffs respectfully submit that the temporary restraints were lawfully proven." *See* Dkt. 10 at p. 3. To the contrary, Plaintiffs' request for restraints was improperly made as Plaintiffs failed to comply with the strict notice requirements of the New Jersey Court Rules. Pursuant to the Rules, a plaintiff seeking injunctive relief may not seek temporary restraints:

August 15, 2025
Page - 3 -

> …unless the defendant has either been given notice of the action or consents thereto or it appears from the specific facts shown by affidavit or verified complaint that immediate and irreparable damage will result to the plaintiff before notice can be served or informally given.

*R.* 4:67-2(a).

Plaintiffs filed their lawsuit on May 30, 2025 and temporary restraints were entered on June 27, 2025. However, no effort was made to serve Defendants until late **July** 2025. *See* Dkt. 10 at p. 1-2.[1]; Dkt No. 15 at p. 1. Plaintiffs also did not aver the potential for immediate loss if notice was provided, making only vague allegations that Richler may abscond with the funds. However, Plaintiffs simultaneously allege that those funds are held by Impact, *not Defendants*. Seeking to enjoin Impact from disbursing funds to Defendants without notice to Defendants, does not prevent diversion by Defendants, it only prevented Defendants from filing opposition to Plaintiffs' Order to Show Cause.

### B.  Plaintiffs Do Not Meet the Elements of a Request for Injunctive Relief

Federal Rule of Civil Procedure 65 empowers courts to grant temporary and preliminary injunctive relief when warranted. *See* Fed. R. Civ. P. 65. However, injunctive relief is "'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Frank M. Gargiulo & Son, Inc. v. Acai Café LLC*, No. 1:23-cv-04018, 2023 WL 4933187, at *1 (D.N.J. Aug. 2, 2023) (quoting *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). To obtain injunctive relief, a movant must show: (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured if relief is not granted. *See Frank*, No. 1:23-cv-04018, 2023 WL 4933187, at *1. Additionally, the court should also consider the possibility of harm to other

---

[1] Plaintiffs provided no documents in support of their claims of attempted service. This is no accident as Plaintiffs' international service efforts are invalid.

Under the Hague Service Convention, a document to be served in Canada originating in the United States must be forwarded by an appropriate authority under Article 3 of the Hague Convention (such as any court official, any attorney, or any other person authorized by the rules of Court) to the relevant Central Authority in Canada.  In Québec, the Canadian Central Authority is the *Direction des orientations, des affaires législatives et de la Refronte, Entraide International* within the Québec Ministry of Justice.  Once a compliant request for service is received by the Canadian Central Authority, according to Article 5 of the Hague Service Convention, the Canadian Central Authority must serve the document "by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory."  In Québec, service must be accomplished by a *huissier de justice* (a bailiff) in accordance with the Québec Code of Civil Procedure.

August 15, 2025
Page - 4 -

interested persons from the grant or denial of the injunction[2], and the public interest. *See id.* Of all the factors "the first two are 'the most critical,' and a movant's failure to establish either at the 'gateway' required the denial of the requested relief." *Id.*; *see also Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) ("This standard for preliminary equitable relief remains; we have repeated that a district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the first two.").

Plaintiff bears the burden of establishing a right to relief. *See A.O. Smith Corp. v. F.T.C.*, 530 F.2d 515, 525 (3d Cir. 1976) ("The applicant for a preliminary injunction bears the burden of establishing a right to such injunctive relief and that irreparable injury will result to him if it is not granted."). While all four elements have issues, the two primary elements - reasonable probability of success and immediate and irreparable harm - are clearly not met.

1.      **Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims As This Court Lacks Jurisdiction**

Plaintiffs allege that their right to relief is "clear" and the "wrong is manifest." *See* Plf. Compl. (Dkt. 1, Ex. A). Specifically, Plaintiffs state that there is a "substantial likelihood of success on the merits" because there is an ongoing police investigation into Richler's conduct and "irrefutable documentary proof" of numerous instances of misconduct." *Id.* As a threshold matter, Plaintiffs are decidedly ***unlikely*** to prevail on the merits of any of their claims for the simple reason that, as summarized in Defendants' earlier pre-motion letter to the Court, this Court does not have personal jurisdiction over Defendants. This alone should end the inquiry.

But that issue aside, the allegations in Plaintiffs' Complaint fall woefully short of establishing a likelihood of success on the merits of any claims. For instance, Plaintiffs' claims as alleged present with multiple deficiencies, including, *inter alia*, the failure to articulate any elements of piercing the corporate veil, insufficient allegations to satisfy their heightened pleading burden for their fraud, and a breach of contract claim against Richler even though it is beyond dispute that he was never individually in privity of contract with any of Plaintiffs. Plaintiffs have not shown a likelihood of success on any of their claims and thus the entry of injunctive relief was not appropriate and it should be dissolved.

a.      **The Forum Selection Clause Requires All Claims to Be Brought in Canada**

As set forth in Defendants' prior correspondence, Plaintiffs' Complaint is subject to dismissal for lack of jurisdiction based on a forum selection clause contained within the contract that forms the basis of Plaintiffs' claims. In response to this argument, Plaintiffs claim that the

---

[2] There are many variations of this third factor in the Third Circuit. *See Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.,* 143 F.3d 800, 803 (3d Cir. 1998) (stating that the court considers "the extent to which defendant will suffer irreparable harm if the preliminary injunction is issued").

August 15, 2025
Page - 5 -

contract was "replaced by a second contract" and this "second contract contains no choice of forum clause." *See* Dkt. 10 at p. 2. This is wildly disingenuous. Plaintiffs' claims arise from this contract and the Complaint alleges multiple breaches of its provisions. In addition, on numerous occasions, Plaintiffs aver that the second contract is invalid and that it "did not claim to supersede the original contract, nor did it contain a merger clause." *See* Plf. Compl. (Dkt. No. 1, Exh A at ¶ 178). Plaintiffs cannot sue on the first contract, disclaim the second, and then take the complete opposite position to avoid a dismissal.[3]

### b. This Court Lacks *In Personam* Jurisdiction Over Defendants

Second, this Court lacks *in personam* jurisdiction over all Defendants. Plaintiffs admit that Richler, Snowy Owl, and Prime Digital are a Canadian individual, Canadian corporation, and a Wyoming limited liability company with its principal place of business in Wyoming, respectively. Compl., ¶¶ 5-6. However, despite these admissions, Plaintiffs then proceed to conclusively assert that Defendants, "systematically conducted business in the State of New Jersey with New Jersey citizens" and "committed torts in New Jersey" without providing any factual allegations connecting Defendants' alleged conduct to New Jersey. *Id.* at ¶ 11. Such bare allegations are insufficient to establish the requisite minimum contacts necessary for courts in New Jersey to exercise personal jurisdiction over Defendants - particularly for the purpose of issuing temporary restraints in New Jersey which require a showing of the likelihood of success on the merits.

Rather, under the Fourteenth Amendment, in order to properly invoke this Court's jurisdiction over Defendants, Plaintiffs must demonstrate that Defendants have sufficient "minimum contacts" with the forum state. *Romero v. Argentinas*, 834 F. Supp. 673, 679 (D.N.J. 1993) (citing *Charles Gendler & Co. v. Telecom Equip. Corp.*, 102 N.J. 460, 472 (1986))[4]. "'The first step in a minimum contact analysis is to determine whether the defendant has sufficient contacts with the forum state. The second step is to evaluate those contacts in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Id.* (citing *id.*).

Plaintiffs must allege facts demonstrating either general or specific personal jurisdiction, as they carry the burden on this issue. *See Dutch Run-Mays Draft, LLC v Wolf Block, LLP*, 450 NJ Super 590, 598 (App. Div. 2017). "For purposes of establishing either specific or general jurisdiction, minimum contacts with a state are shaped by purposeful conduct making it reasonable for the defendant to anticipate being haled into court there." *Romero*, 834 F. Supp. at 679 (citing

---

[3] Plaintiffs also argue that the contract was presented to them in a way that was "manifestly unfair" and, thus, the forum selection clause is invalid. No further detail is provided in Plaintiffs' recent letter or in their Verified Complaint, which (again) asserts claims arising under this contract.

[4] *Romero v. Argentinas*, 834 F. Supp. 673, 679 (D.N.J. 1993) ("Federal courts sitting in New Jersey apply New Jersey law when interpreting the meaning of due process of determining in *personam* jurisdiction." ); Fed. R. Civ. P. 4(e) ("district courts have personal jurisdiction over nonresident defendants to the extent authorized under the law of the forum state in which the district sits.")

August 15, 2025
Page - 6 -

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "In measuring the sufficiency of minimum contacts for *in personam* jurisdiction, a court must focus upon 'the relationship among the defendant, the forum and the litigation.'" *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984).

To establish specific jurisdiction consistent with due process, Plaintiffs' claim must arise out of or relate to the defendant's contacts with the forum state. *Dutch Run-Mays Draft, LLC*, 450 NJ Super at 598. "In determining whether the district court has specific jurisdiction…'the constitutional touchstone remains whether the defendant purposefully established minimum contacts in the forum state[,]'" '"such that defendant should reasonably be haled into court there."' N. *Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 690 (3d Cir. 1990) (citations omitted). In contrast, general jurisdiction requires that the defendant's contacts with the forum state be so substantial as to render it essentially "at home" in the forum state, approximating physical presence. *Dutch Run-Mays Draft, LLC*, 450 NJ Super at 601. The standard for establishing general jurisdiction is consequently quite high. *See id.* Here, Plaintiffs have failed to demonstrate that either the specific or general jurisdictional requirements have been met.

Neither Plaintiffs' Complaint nor the Order to Show Cause contains specific factual allegations that establish a basis for personal jurisdiction over Defendants in the State of New Jersey. As detailed above, despite the Complaint's conclusory assertions that Defendants conducted business in New Jersey and committed torts therein, the pleadings fail to provide the specificity required to establish a connection between Defendants and the forum state, or specify what torts were allegedly committed within the forum state and how they relate to this litigation. Compl., ¶ 11. The Order to Show Cause provides even less substantiation as it is wholly silent regarding any conduct by Defendants within the State of New Jersey. (ECF No. 1-1). Nevertheless, the Superior Court of New Jersey, relying on these inadequate pleadings, erred in issuing temporary restraints, and those restraints should be dissolved for this reason alone. *See generally Royal & Sunalliance Ins. Co. v. Resolve Towing & Salvage, Inc.,* 00 Civ. 2473 (RO), 2000 U.S. Dist. LEXIS 17575, at *8 (S.D.N.Y. Dec. 6, 2000) (granting motion to dismiss on for lack of personal jurisdiction and dissolving the temporary restraining order).

### c. The Premise of Plaintiffs' Claims Against Snowy Owl and Richler Is Patently False

If Richler and Snowy Owl had the opportunity to fully brief the issues, they would provide substantial information demonstrating why Plaintiffs' allegations consist of (at best) hyperbole and (at worst) are patently false. Nevertheless, for purposes of this application, Richler and Snowy Owl will refute Plaintiffs' main and most egregious allegation – that they maliciously changed account information online and this led to the downfall of Plaintiffs' business. *See* Plf. Compl. (Dkt. No. 1, Ex. A at ¶ 40).

August 15, 2025
Page - 7 -

As set forth in the attached Declaration of Mitchell Richler, the account change was a request made by Plaintiff Houck as a favor. *See* Decl. of M. Richler (Dkt. No. 17-1 at ¶ 5). Richler performed the task as directed and provided evidence that it was done. *See id.* at ¶ 6. Thereafter, Richler learned that Houck's requested change was for purposes of diverting funds that were the property of a factoring company to Houck's own accounts – a fact Houck did not disclose to Richler. *Id.* at ¶ 7. This was naturally a breach of the factoring agreement and this conduct, along with Houck's other admitted instances of financial mismanagement, caused Plaintiffs to lose a major client. *Id.* at ¶¶ 8-9.[5]

### d. The allegations against Prime Digital are Demonstrably False

As detailed in Prime Digital's pre-motion letter (Dkt. No. 12), the crux of Plaintiffs' complaint against Defendant Prime Digital is premised upon the demonstrably mistaken assertion that Defendant Richler owns and founded Prime Digital, and was acting in a representative capacity during the alleged wrongful actions complained of by Plaintiffs. *See* Plf. Compl. (Dkt. No. 1, Ex. A at ¶¶ 18, 73,74, 100, 103). Prime Digital's incorporation documents, however, clearly show no corporate affiliation between Richler and Prime Digital, rendering Plaintiffs' attribution of Richler's alleged misconduct to Prime Digital factually incorrect and legally baseless. *See* Decl. of T. Eeds (Dkt. No. 17-2); *see also* Dkt. No. 17-1.

Moreover, a significant portion of Plaintiffs' case is predicated upon Prime Digital's alleged interference with its Capital One contract. *See* Plf. Compl. (Dkt. No. 1, Ex. A at ¶¶ 146-155). However, Prime Digital was not formed until August 6, 2024, well after Capital One terminated its contract with Plaintiffs around June or July of 2024. *See* Dkt. No. 17-2. The incontrovertible fact of Prime Digital's formation date, subsequent to Capital One's contract termination, establishes the temporal impossibility of Plaintiffs' claims. Furthermore, Plaintiffs have unequivocally failed to particularize any specific acts of alleged misconduct attributable to Defendant Prime Digital specifically but instead impermissibly lump Defendants together without identifying any specific actions or omissions allegedly undertaken by Prime Digital or simply assert that "Richler…under the banner of Prime Digital Ads" performed various acts of alleged misconduct. *See* Plf. Compl. *(*Dkt. No. 1, Ex. A at ¶¶ 73,74, 100, 103, 132-167, 185-201).

All of the allegations set forth in Plaintiffs' Complaint against Prime Digital, including but not limited to those pertaining to an alleged non-disclosure agreement as discussed in Plaintiffs' motion letter (Dkt. No. 15), are predicated on the existence of an ownership interest or corporate affiliation between Richler and Prime Digital. Absent a demonstration of such ownership or affiliation, Plaintiffs' claims must fail as a matter of law.

---

[5] Plaintiffs were advised of this issue and instructed to cease making false allegations regarding the account entry issue via letter dated November 18, 2024. While Plaintiffs reference this letter in their Complaint – *See* Dkt. 1 at ¶ 109 – they claim this three-page letter is too voluminous to attach to attach to Plaintiffs' thirty-five page Complaint.

August 15, 2025
Page - 8 -

### 2. <u>Plaintiffs Cannot Demonstrate a Potential for Immediate and Irreparable Harm</u>

The issuance of temporary restraints in this matter was procedurally improper and substantively unwarranted because Plaintiffs failed to establish "irreparable harm" as required by *Crowe v. DeGioia*, 90 N.J. 126, 132-134 (1982). Rather, Plaintiffs' claims, despite attempts to frame them otherwise, are primarily concerned with pecuniary losses, for which adequate remedies exist at law, precluding the necessity of injunctive relief.

"New Jersey has long recognized, in a wide variety of contexts, the power of the judiciary to 'prevent some threatening, irreparable mischief, which should be averted until opportunity is afforded for a full and deliberate investigation of the case." *Id.* at 132. "One principle is that a preliminary injunction should not issue except when necessary to prevent irreparable harm." *Id.* "Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages." *Id.* at 132-33. "Thus, in order to warrant a preliminary injunction, the injury created by a failure to issue the requested injunction must 'be of a peculiar nature, so that compensation in money cannot atone for it.'" *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) (citations omitted). "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for.'" *Id.* (citations omitted). Therefore, where money damages are "capable of ascertainment and award at final judgment" and will fully compensate the plaintiff for its losses, a preliminary injunction should not be issued. *Instant Air Freight Co., v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989); *see also Frank's GMC Truck Center v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir.1988) ("The availability of adequate monetary damages belies a claim of irreparable injury."). Plainly put, economic loss does not constitute "irreparable harm." *Marsellis-Warner*, 51 F.Supp.2d at 529.

Here, a review of Plaintiffs' Complaint unequivocally establishes that the Plaintiffs' alleged "immediate and irreparable" harm is primarily monetary as they allege that Plaintiffs "will suffer immediate and irreparable harm if the funds in question are allowed to be disbursed, particularly as Defendant Richler resides in Canada." *See* Plf. Compl. (Dkt. No. 1, Ex. A at ¶ 212). Moreover, Plaintiffs' brief likewise centers on alleged monetary damages, such as business losses, the threat of bankruptcy, and the recovery of allegedly ill-gotten funds. *Id.* at p. 4-5 of Brief. This focus on pecuniary damages, albeit without any factual support, demonstrates that Plaintiffs' alleged harms are quantifiable in monetary terms, rendering temporary restraints inappropriate. *See Truong, LLC v. Tran*, No. A-5752-11T1, 2013 N.J. Super. Unpub. LEXIS 64, at *26 (App. Div. Jan. 9, 2013) (finding that plaintiff's damages could be redressed adequately by monetary damages despite arguments, *inter alia*, that the loss of business was difficult to calculate); *Figueroa v. Precision Surgical, Inc.*, 423 F. App'x 205, 211 (3d Cir. 2011) ("[E]ven when an action will result in the destruction of a business, a District Court was still justified in refusing to granting a preliminary injunction when the loss was 'capable of ascertainment and award at final judgment if petitioner prevails[]" and concluding that [Appellee's] "evidence focused on its projected loss

August 15, 2025
Page - 9 -

of income and the diversion of business interests, indicating any injury was compensable through a monetary damages award.").

Simply stated, the relief requested herein problematic because it is tantamount to a prejudgment attachment of Defendants' assets which is not authorized under New Jersey law. Moreover, Plaintiffs have not provided any proof, or even adequately specific factual allegations, to support their contention that the risk of bankruptcy protection and IRS garnishments is related to Defendants' actions, or that preventing those perceived potential harms would support the entry of injunctive relief against Defendants.  And, most fundamentally, nothing in Plaintiffs' Complaint or moving papers demonstrates that the supposed harm about which Plaintiffs' complain cannot be adequately compensated by an award of money damages.  *See Morton v. Beyer*, 822 F.2d 364 (3d Cir.1987) ("[A]lthough we are not insensitive to the financial distress suffered by [the plaintiff], we do not believe that loss of income alone constitutes irreparable harm."). Stated plainly, injunctive relief is not appropriately entered to assuage a plaintiff's concerns (whether justified or not) about their ultimate ability to recover payment of a yet-to-be-obtained money judgment. Because only money damages are at issue, there was no basis for the state court to order any injunctive relief in favor of Plaintiffs and those restraints should be dissolved.

Lastly, it bears noting that Plaintiffs have also failed to present any evidence or reasonable inferences demonstrating that Prime Digital's conduct specifically would cause them irreparable harm in any form, instead focusing on Richler's alleged conduct, thus further rendering the issuance of temporary restraints against Prime Digital unwarranted.

## 3.     The Possibility of Harm to Defendants is Significant and Consists of More Than Monetary Damages.

The court also must balance the equities and consider the harm caused to the defendants and other parties should the requested injunctive relief be entered. *See Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) ("The third factor a district court must consider before granting preliminary injunctive relief is the harm defendant might suffer should the relief be granted."). In considering this harm, the district court must balance the hardships to the respective parties. *See id*. The objective is to ensure that the issuance of the injunction will not cause more harm to the enjoined party that the harm (if any) that would befall the movant in the absence of the entry of injunctive relief.  *See id.*

Here, Defendants will sustain substantial harm if the restraints entered by the court are maintained while, on the other hand, Plaintiffs will not sustain any harm in the absence thereof. In this action, the funds that are the subject of the injunction order are in the possession of Impact and belong to Defendants. To the extent Plaintiffs claim some right and interest in and to those same funds, it is at this juncture just that – a claim, which is hotly contested, and that must be proven at trial. Further, Plaintiffs' claims (as explained above) seek monetary redress for supposed breaches of contractual and other alleged duties – none of which support the entry of injunctive

August 15, 2025
Page - 10 -

relief tying up Defendants' funds. In short, Defendants will sustain substantial harm if the funds to which they alone have rights are kept from them based on Plaintiffs' baseless allegations and on the hope of some future money judgment. In sharp contrast, the release of the restraints will not work *any* harm to Plaintiffs who do not have, and never had, any right to the subject funds and only aspire to obtain a judgment that may implicate those funds later. Accordingly, this factor weighs in favor of dissolution of the state court's injunction order. *See Home Line Furniture Indus., Inc. v. Banner Retail Marketing, LLC*, No. 09–1713, 631 F.Supp.2d 628 (E.D.Pa. 2009).

### 4. The Public Interest Factor Favors Defendants or Is Neutral

Lastly, a court must consider whether the issuance of a preliminary injunction serves the public interest before granting preliminary injunctive relief. *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 197 (3d Cir. 1990). Public interest can be defined a number of ways but is most often a "synonym for the right of the public not to be deceived or confused." *Id.*

Plaintiffs argue that they will be in a more secure position and Defendants will be precluded from "absconding with the funds that they obtained as a result of fraud." *See* Plf. Compl. (Dkt. No. 1, Ex. A). These allegations, setting aside they are wholly conclusory and lack any factual merit, do not speak to public interests. While the interests of the public are not squarely implicated by this action, Defendants respectfully suggest that the public interest would be best suited by refusing to enter (or in this instance, to dissolve) *ex parte* injunctive relief in favor of Plaintiffs who (a) failed to provide notice of suit in contravention of *R.* 4:52-1, (b) do not have a valid jurisdictional basis to file their lawsuit in New Jersey, (c) claim harm that can be fully compensated by money damages alone, and (d) do not have a likelihood of success on the merits of any of their claims.

For the reasons set forth above, Defendants request that this Court dissolve the injunctive restraints imposed by the state court.

Respectfully submitted,


/s/ *Geoffrey F. Sasso*
Geoffrey F. Sasso, Esquire
Buchanan Ingersoll & Rooney PC
*For Mitchell Richler and Snowy Owl Technologies Inc.*

/s/ *Andrew I. Hamelsky*
Andrew I. Hamelsky, Esquire
Stradley Ronon Stevens & Young, LLP
*For Prime Digital Ads, LLC*

cc:    All counsel (via email and ECF)