# EXHIBIT C

# CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement") is made by and between Capital One Services, LLC ("COS") and  Gray Harbor LLC                           ("Supplier"), as of 03/01/2023        (the "Effective Date").

**WHEREAS,** the Parties (as defined below) have an interest in conducting discussions regarding

Capital One will be discussing Affiliate marketing strategy and customer info data sharing

(the "Transaction"); and

**WHEREAS**, the Parties anticipate that the discussions may include, directly or indirectly, Confidential Information (as defined below) of COS and affiliates of COS (collectively, "Capital One") and of Supplier and affiliates of Supplier (collectively, "Company") (hereinafter Company and Capital One are each referred to as a "Party" and collectively, as the "Parties"); and

**WHEREAS**, in connection with the Transaction, each Party may, directly or indirectly, have been and may be supplied with, granted access to, or exposed to materials and information concerning the other Party and the Transaction which (i) are identified as nonpublic, confidential, or proprietary at the time of such disclosure or (ii) under the circumstances of their disclosure, a reasonable party would deem to be nonpublic, confidential, or proprietary ("Confidential Information"), and which may include, but is not limited to, information about or concerning that Party's: (a) financial condition and projections; (b) business ventures and strategic plans; (c) marketing strategies and programs; (d) customers and prospective customers, including nonpublic personal information as defined in the Gramm-Leach-Bliley Act, Title V, and regulations promulgated thereunder; (e) strategic insights and statistical models about such customers or prospective customers and their behavior; and (f) inventions, creations, developments, works of authorship, trade secrets, know-how, technology, and similar items.

**NOW, THEREFORE**, AS A CONDITION TO, AND IN CONSIDERATION OF, CAPITAL ONE FURNISHING ANY CONFIDENTIAL INFORMATION TO COMPANY, AND COMPANY FURNISHING ANY CONFIDENTIAL INFORMATION TO CAPITAL ONE, CAPITAL ONE AND COMPANY AGREE AS FOLLOWS:

1.      <u>The Parties</u>.  The Party being provided with Confidential Information, directly or indirectly, is referred to herein as "Recipient" and the Party providing such Confidential Information about such Party or the Transaction is referred to herein as "Discloser."

2.      <u>Description of Information</u>.  Forms of Confidential Information include, without limitation: (a) Confidential Information transmitted, disclosed, or made available in written, oral, magnetic, or any other medium; (b) all copies and reproductions, in whole or in part, of Confidential Information; and (c) all summaries, analyses, compilations, studies, notes, or other records which contain, reflect, or are generated from Confidential Information. Confidential Information does not include information that Recipient can demonstrate: (i) was, at the time of disclosure to Recipient, in the public domain or, after disclosure to Recipient, has become part of the public domain through no act or omission of Recipient; (ii) is or was developed independently by Recipient without use of or reference or access to Confidential Information; (iii) was in the possession of Recipient, without confidentiality restrictions, at the time of disclosure to Recipient hereunder; or (iv) is lawfully and independently provided to Recipient by a third party who, to the knowledge of Recipient, is not subject to an obligation of confidentiality or otherwise prohibited from disclosing or transmitting such information.

3.      <u>No Disclosure or Unauthorized Use of Information</u>.

(a) Recipient will not use, disclose, commercialize, exploit, or otherwise exercise any rights in connection with the Confidential Information of Discloser in any manner or for any purpose except as expressly permitted under the Agreement. Recipient shall hold and protect all Confidential Information of the Discloser in confidence with at least the same degree of care it employs to protect its own confidential or proprietary information of a similar nature or sensitivity, but in no event less than a commercially reasonable standard of care. Recipient hereby agrees that it and its Representatives (as defined below) will use Confidential Information of the Discloser exclusively to the extent necessary for the purpose of the Transaction. Without limiting the generality of the foregoing, neither Recipient nor its Representatives shall (a) use any Confidential Information of the Discloser in furtherance of Recipient's business or the business of any person or entity other than Discloser, irrespective of whether such business competes with Discloser or (b) disclose or otherwise include any Confidential Information in any patent or patent application filed anywhere in the world. Recipient shall be permitted to disclose or make available any Confidential Information of the Discloser to its affiliates, directors, officers, employees, contractors, agents, accountants, attorneys, and other confidential advisors (collectively, the "Representatives") who need to know such Confidential Information for the purpose of assisting Recipient in connection with the Transaction or with complying with applicable law (subject to Section 7) or enforcing Recipient's rights under the Agreement. Recipient shall advise its Representatives, prior to any disclosure by Recipient, of the confidential nature of such Confidential Information and shall ensure that its Representatives are bound by written restrictions on use and disclosure and other confidentiality protections, if not subject to existing obligations at least as restrictive as those contained in the Agreement. Recipient agrees to ensure that each of its Representatives complies with the terms of the Agreement and further agrees to be solely responsible and liable to Discloser for any act, omission, or other failure to comply with the terms of the Agreement by any of its Representatives. Recipient acknowledges that any failure of its Representatives to comply with the terms of the Agreement shall be deemed a breach by Recipient and that Recipient shall be liable to Discloser for any such breach or failure.

(b) Recipient shall not decompile, disassemble, or otherwise reverse engineer any of Discloser's Confidential Information, or determine or attempt to determine any source code, algorithms, methods, or techniques embodied in such Confidential Information, except where such restriction is expressly prohibited by applicable law.

4. <u>Nondisclosure of Transaction</u>. Except as expressly permitted in accordance with the Agreement, neither Recipient nor its Representatives, without the prior written consent of Discloser, shall disclose to any person or entity (it being acknowledged that each of the following shall be included in the definition of Confidential Information): (a) the fact that Confidential Information has been provided to it or that it has had access to Confidential Information under the Agreement; (b) that discussions or negotiations are taking place with respect to the Transaction; (c) the existence, terms, conditions, or other facts of such Transaction, including the status thereof; or (d) any fact or circumstance that, by itself or together with publicly available information, would permit a reasonable third party to infer any of Discloser's Confidential Information or any of the foregoing (a) through (c), including without limitation through any social media activity (<u>e.g.</u>, a social media check-in at Discloser's location by one of Recipient's Representatives).

5. <u>Ownership of Information</u>. Recipient acknowledges and agrees that any Confidential Information of Discloser, in whatever form, is and shall be the sole property of Discloser, and Discloser shall retain and own all right, title and interest in and to any Confidential Information, including all intellectual property and proprietary rights therein, whether currently existing or arising in the future. No present or future intellectual property rights or licenses are offered, granted, or implied by Discloser in the disclosure of any Confidential Information to Recipient. Recipient agrees that upon the request of, and as directed by, Discloser, it shall either return such Confidential Information to Discloser or shall destroy such Confidential Information as so directed; provided, however, Recipient may retain a copy of any Confidential Information, including summaries, compilations, or analyses thereof to the extent: (a) required by applicable law; (b) required by Recipient's internal document retention and governance policies; or (c) it would be unreasonably burdensome to destroy such Confidential Information (such as archived computer records). Any Confidential Information retained pursuant to subsections (a), (b), or (c) shall continue to be treated as

Confidential Information subject to the restrictions set forth in the Agreement, notwithstanding any termination or expiration hereof. The return or destruction of Confidential Information shall not relieve Recipient of its obligations set forth in the Agreement.

6. <u>Remedies</u>.  Recipient acknowledges that all Confidential Information of Discloser is proprietary and of competitive value, and in many instances, trade secrets. Recipient agrees that because of the unique nature of such Confidential Information, any breach of the Agreement would cause Discloser irreparable harm, and money damages and other remedies available at law in the event of a breach would not be adequate to compensate Discloser for any such breach. Accordingly, Recipient agrees that Discloser shall be entitled, without the requirement of posting a bond or other security, to equitable relief, including, without limitation, injunctive relief, and specific performance, as a remedy for any such breach. Such relief shall be in addition to, and not in lieu of, all other remedies available to Discloser, whether under the Agreement, at law or in equity.

7. <u>Compelled Disclosure</u>.  If Recipient or any of its Representatives is legally compelled (whether by regulatory request, deposition, interrogatory, request for documents, subpoena, civil investigation, demand, or similar process) to disclose any Confidential Information of Discloser, Recipient shall, to the extent permitted by law, promptly notify Discloser in writing of such requirement so that Discloser may seek a protective order or other appropriate remedy and/or waive compliance with the provisions hereof. Recipient will use commercially reasonable efforts, at Discloser's expense, to obtain or assist Discloser in obtaining any such protective order. Failing the entry of a protective order or the receipt of a waiver hereunder, Recipient may disclose, without liability hereunder, that portion of such Confidential Information that it has been advised by counsel that Recipient is legally compelled to disclose; however, Recipient agrees to use commercially reasonable efforts to obtain assurance, at no cost to Recipient, that confidential treatment will be accorded such Confidential Information by the person or persons to whom it is disclosed.

8. <u>Securities Law Compliance</u>.  Recipient acknowledges and shall advise its Representatives who are informed as to the matters which are the subject of the Agreement, that federal and many state securities laws prohibit any person who has received an issuer's material, nonpublic information from purchasing or selling securities of such issuer or from communicating such information to any other person.

9. <u>Communications Regarding the Transaction</u>.  Each Party agrees that all communications with the other Party, including any notice required pursuant to the Agreement, will be directed to the following Capital One or Company contacts, as applicable:

        If to Capital One:     Capital One Services, LLC
                                    ATTN: Director Procurement
                                    15000 Capital One Drive, Mailstop 12075-0150
                                    Richmond, Virginia 23238

                                    Capital One Services, LLC
                                    ATTN: Chief Procurement Officer
                                    15000 Capital One Drive, Mailstop 12075-0150
                                    Richmond, Virginia 23238

                (Or such other individuals specified from time to time by Capital One).

        If to Company:       (i) the address listed on Company's website, (ii) the address listed on Company's W-9 form or Vendor Profile if previously provided to Capital One or (iii) such other address specified by Company from time to time.

10. <u>No Waiver of Rights</u>.  No failure or delay by either Party in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power, or privilege hereunder.

The invalidity or unenforceability of any provision of the Agreement shall not affect the validity or enforceability of any other provision of the Agreement, all of which shall remain in full force and effect.

11.  <u>No Representations and Warranties</u>.  Discloser makes no representation or warranty, expressed or implied, as to the accuracy or completeness of any Confidential Information, and Discloser shall not be liable to Recipient or to any other person resulting from the use of any Confidential Information. Only those representations or warranties that are made in any definitive written agreement executed in connection with the Transaction, if any, and subject to any limitations and restrictions as may be specified in such definitive agreement, shall have any legal effect.

12.  <u>No Commitment to Contract; Definitive Written Agreement</u>.  The Agreement does not constitute a commitment by either Party to engage in or enter the Transaction, nor does it create an implied obligation of either Party to do business with the other Party. No contract or agreement providing for the Transaction shall be deemed to exist between the Parties unless and until a definitive written agreement between them has been executed and delivered. Without limiting its obligations under the Agreement, each Party shall always be free to engage in research, development, and/or agreements with third parties relating to or encompassing the subject matter of the Transaction.

13.  <u>Governing Law, Jurisdiction, and Venue</u>.

(a)  The Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without reference to its choice of law provisions, shall be binding upon each Party and its respective successors and assigns, and shall inure to the benefit of each Party and its respective successors and assigns.

(b)  Each Party hereby irrevocably and unconditionally submits, for itself, its successors and assigns, and its property, to the exclusive jurisdiction of any Delaware state court or federal court of the United States of America sitting in Wilmington, Delaware, and each Party hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in any such Delaware state court, or, to the extent permitted by law, in any such federal court.

(c)  Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection, including the defense of an inconvenient forum, that it may now or hereafter have to the laying of venue of any suit, action, or proceeding arising out of or relating to the Agreement in any state or federal court sitting in Wilmington, Delaware.

(d)  **EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT IT MAY LEGALLY AND EFFECTIVELY DO SO, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING (WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF, OR RELATED TO, THE AGREEMENT.**

14.  <u>Term</u>.  The term of the Agreement will commence on the Effective Date and will remain in effect until the second anniversary of such Effective Date, except that with respect to any Confidential Information disclosed hereunder as a trade secret and subject to the provisions set forth in Section 5 hereof, the terms and conditions of the Agreement will survive with respect to such Confidential Information for so long as such trade secret remains protectable as a trade secret under applicable law.

15.  <u>Counterparts; Facsimile/Electronic Signatures</u>.  The Agreement may be executed in counterparts, any of which manually signed signature pages may be delivered by facsimile or through the transmission of an electronically scanned version, each of which shall be considered an original and, taken together, shall constitute one and the same instrument. Alternatively, the Parties agree (i) that this Agreement may be electronically or digitally signed by authorized representatives of both Parties, and (ii) such electronic or digital signature shall be deemed a writing signed by such authorized representatives.

DocuSign Envelope ID: 53B994C7-0718-4361-98DA-F83885F977D8

   BY HAVING AN AUTHORIZED REPRESENTATIVE OF EACH PARTY EXECUTE THE AGREEMENT IN THE SPACE PROVIDED BELOW, EACH PARTY ACKNOWLEDGES ITS AGREEMENT TO HOLD ALL MATTERS STRICTLY CONFIDENTIAL AS DISCUSSED HEREIN, AND TO ABIDE BY ALL TERMS AND CONDITIONS OF THE AGREEMENT AS OF THE EFFECTIVE DATE FIRST WRITTEN ABOVE.

**Capital One Services, LLC**

By: *Walt Roloson* (DocuSigned, C5ABA84C2A8F4FD...)

Name: Walt Roloson

Title: Managing Vice President

**Gray Harbor LLC**

By: *Brett Houck* (DocuSigned, BACE2BA468AB424...)

Name: Brett Houck

Title: CEO