**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| GRAYS HARBOR LLC D/B/A | : | |
| GRAY HARBOR | : | |
| AND | : | |
| BRETT HOUCK | : | |
|     Plaintiffs, | : | Civil Action No. 1:25-cv-13680-ESK |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| PRIME DIGITAL ADS, | : | |
| SNOWY OWL TECHNOLOGIES INC., | : | |
| MITCHELL RICHLER, | : | |
| TYLER EEDS, | : | |
| SARA EEDS, | : | |
| AND | : | |
| IMPACT TECH, INC. | : | |
|     Defendants | : | |

**PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs Grays Harbor LLC d/b/a Gray Harbor, and Brett Houck, hereby file the

following Amended Complaint against Prime Digital Ads, Snowy Owl Technologies Inc.,

Mitchell Richler, Tyler Eeds, Sarah Eeds, and Impact Tech, Inc. in accordance with the Order of

this Honorable Court dated September 11, 2025, (Doc. 26) and aver as follows:

**INTRODUCTION**

1. This case presents a situation where a faithless manager of an LLC used his specialized

   knowledge, position as Chief Operating Officer, and trust of the owner to engage in a fraud

   including multiple breaches of fiduciary duties including but not limited forging execution of

   contracts, self-dealing, usurping corporate opportunities without compensation, causing

   damage to Plaintiff's business leaving it unable to pay its partners, misrepresenting the cause

   of Plaintiffs' financial distress and defaming Plaintiffs, making unauthorized disclosures of

   Plaintiffs' confidential information, improperly interfering with Plaintiffs' then existing and

prospective business contracts, fraudulently engaging in discussions to purchase Plaintiffs'

distressed business at a discount, retaining confidential information and corporate property,

then ultimately stealing the assets of Plaintiffs' business and conducting business as "Gray

Harbor 2.0" using Plaintiffs' assets, intellectual property, business relationships, technology,

and staff, while defaming Plaintiffs and destroying their reputations and business.

## **PARTIES**

2.  Plaintiff Grays Harbor LLC is a limited liability company duly authorized to conduct
    business in the State of New Jersey under Entity Number 0450216960 with a principal place
    of business in Cape May County, New Jersey.

3.  Gray Harbor is the Alternate Name under which Plaintiff Grays Harbor LLC is duly
    authorized to conduct business in the State of New Jersey.  Plaintiff Grays Harbor LLC shall
    be referred to as "Gray Harbor" hereinafter.

4.  Plaintiff Brett Houck is an adult resident of Cape May County, New Jersey.

5.  Defendant Prime Digital Ads is a limited liability company duly authorized to conduct
    business in the State of Wyoming at filing identification number 2024-001501724, with a
    principal place of business located at 1712 Pioneer Avenue, Suite 596, Cheyenne, WY
    82001.

6.  Defendant Prime Digital Ads has a registered agent of Capital Administrations LLC, 1712
    Pioneer Ave., Ste 115, Cheyenne, WY 82001.

7.  Defendant Snowy Owl Technologies, Inc., hereinafter referred to as "Snowy Owl", is a
    corporation duly authorized by the Canada Business Corporations Act, RSC at Quebec
    Business Number 1169410942, with a principal place of business of 725 Rue de Satim,
    Montreal, Quebec, H4M2W8, Canada.

8. Defendant Mitchell Richler is an adult resident of Quebec, Canada.

9. Defendant Tyler Eeds is an adult resident of Gilbert, Arizona.

10. Defendant Sara Eeds is an adult resident of Gilbert, Arizona.

11. Defendant Impact Tech, Inc., hereinafter "Impact", is a corporation duly authorized to conduct business in the State of Delaware, with a principal place of business at 223 East de la Guerra Street, Santa Barbara, CA 93101.

## JURISDICTION AND VENUE

12. This Honorable Court has jurisdiction in this matter as the events giving rise to this litigation occurred in the State of New Jersey.

13. This Honorable Court has personal jurisdiction over Defendant Richler as he systematically conducted business in the State of New Jersey with New Jersey citizens and companies as the Chief Operating Officer of a New Jersey limited liability company. Richler traveled regularly to New Jersey and stayed for multiple days at Plaintiffs' expense. He also managed multiple employees in New Jersey on a daily basis and communicated with Houck seven days per week, multiple times per day. Defendant Richler also committed torts in New Jersey against Plaintiffs.

14. This Honorable Court has personal jurisdiction over Defendant Snowy Owl as it systematically conducted business in the State of New Jersey with New Jersey citizens and companies as the company through which Richler was hired as the Chief Operating Officer of a New Jersey limited liability company and through which he received payments.

15. This Honorable Court has personal jurisdiction over Defendant Prime Digital Ads as it is an essential component to the fraud perpetrated against Plaintiffs. Prime Digital Ads is the

company using Gray Harbor's funnel to do business with Capital One Shopping with Gray Harbor's clients in violation of the Nondisclosure Agreement.

16. This Honorable Court has personal jurisdiction over Defendant Tyler Eeds as he is an Owner of Prime Digital Ads as well as an essential participant in the fraud against Plaintiffs. Further, Defendant Tyler Eeds is also subject to jurisdiction by filing a lawsuit in New Jersey against Plaintiffs through his other corporation, Caerus Media at United States Court for the District of New Jersey Docket Number 1:25-cv-01120-ESK.

17. This Honorable Court has personal jurisdiction over Defendant Sara Eeds as she is an Owner of Prime Digital Ads.

18. Venue is appropriate in the District of New Jersey pursuant to Rule 4:3-2 as the events giving rise to this litigation occurred in New Jersey.

## **FACTS**

19. Plaintiffs incorporate by reference their averments contained in Paragraphs 1 through 18 as if same were set forth at length herein.

20. Plaintiff Brett Houck is the sole owner and member of Gray Harbor and has been at all times since its inception.

21. Management of Plaintiff Gray Harbor is vested in its managers / officers including a Chief Executive Officer, a Chief Operating Officer, and a Chief Growth Officer.

22. Plaintiff Brett Houck is the Chief Executive Officer of Gray Harbor.

23. Plaintiff Gray Harbor is engaged in the business of digital advertising.

24. Plaintiff Gray Harbor entered into a lucrative contract with Capital One Services, LLC, under the brand name of Capital One Shopping, hereinafter referred to as "Capital One", in 2022.

25. Gray Harbor created a unique model in the digital advertising arena built on transparency, accountability, and shared goals.  Unlike others in its position, Gray Harbor did not attempt to hide who was driving the web traffic.  The model of a joint advertiser-publisher ecosystem was built on open collaboration, not hiding publishers or advertisers.  The advertising funnel and methods constitute trade secrets.  While companies such as Caerus Media run the media buying (ad spending, campaign execution), Gray Harbor would manage the advertiser relationships and onboard the partners.  The affiliates do not negotiate with advertisers or add partners to tracking systems.

26. Due to the unique nature of this relationship, Gray Harbor and Capital One entered into a comprehensive Nondisclosure Agreement.  A true and correct copy is attached hereto as Exhibit A.

27. Defendant Mitchell Richler is the sole owner of Snowy Owl.

28. Defendants Tyler Eeds and Sara Eeds are the owners of Prime Digital Ads.

29. As the owner of Caerus Media, a Gray Harbor partner, Defendant Tyler Eeds was privy to confidential information such as margins and payouts, and further, was able to communicate directly with Capital One, which it would not have been able to do under a traditional model of digital advertising.

30. Defendant Mitchell Richler was hired by Plaintiff Gray Harbor on May 10, 2022, to provide services to related to a digital advertising contract with Capital One Services, LLC, under the brand name of Capital One Shopping, hereinafter referred to as "Capital One".

31. Defendant Richler was named Vice President of Business Development of Gray Harbor in August 2022.

32. Defendant Richler was named the Chief Operating Officer (COO) of Plaintiff Gray Harbor on May 20, 2023.

33. Defendant Richler identified himself as COO of Plaintiff Gray Harbor in numerous contracts which he executed (one example attached hereto as Exhibit D), presentations to customers, his email signature (attached hereto as Exhibit B), as well as his publicly available LinkedIn profile from November 18, 2024 (attached hereto as Exhibit C).

34. Defendant Richler remained COO of Gray Harbor until his resignation on July 17, 2024, via text message.

35. Defendant Richler's duties included recruitment of advertising partners, executing contracts, onboarding advertising partners, managing all active accounts, managing financial information, collecting tax information such as W-9 forms, managing invoicing, and employee management including direct reports, hiring, and firing.

36. Defendant Richler worked directly with Capital One on behalf of Gray Harbor in many aspects and conducted numerous meetings with them via Zoom, phone, and in person.

37. Defendant Richler wAS to be paid thirty percent (30%) of monthly profits generated on a net thirty basis.

38. Without actual or apparent authority, consent, or ratification, Defendant Richler executed numerous contracts on behalf of Plaintiffs Gray Harbor and Houck through multiple means of forgery, including but not limited to digital signatures, DocHub, and Docu-sign, with both domestic and international clients.  These contracts include but are not limited to those with App Glowing, AppLovin, Aragon Advertising, LLC, Click Dealer, Eksmedia Ltd., Affilirev Sociedade Unipessoal Lda, Hitapps Inc., Interest Media, Inc., LifeStreet International, Media Force Communications, Admediary, LLC, and Typhon Interactive LLC.

39. Many of these contracts include terms that vary significantly from Gray Harbor's standard terms and conditions, including but not limited to reduced commissions and personal guarantees on behalf of Brett Houck.

40. Plaintiffs only learned of this malfeasance when unpaid creditors began collection activities and sought to impose personal liability against Houck.

41. The relationship between Defendant Richler and Houck began to deteriorate in April 2024 when Houck asked Defendant Richler to hold a portion of his commissions, which were excessive relative to industry standards.

42. Using Gray Harbor's resources and staff, Defendant Richler secretly undertook numerous advertising opportunities rightfully belonging to Gray Harbor for which he received remuneration, and did not compensate or receive permission from Gray Harbor, including but not limited to Sick Media related to a Draft Kings National Football League promotion.

43. Upon information and belief, Defendant Richler was receiving kickbacks from Gray Harbor's clients including Caerus Media and Wizco Media in exchange for razor thin margins for Gray Harbor's commissions.

44. On May 28, 2024, Defendant Richler was tasked with entering payment information for two payments into Gray Harbor's financial system with Impact Tech.

45. Plaintiff Houck provided a screen shot of the banking information with the correct numbers from the Bank of America app to Defendant Richler.

46. Plaintiff Houck communicated with Defendant Richler by telephone and text message on multiple occasions while he was performing the task to make sure that the information was entered correctly.

47. Defendant Richler had the necessary education, training, and experience to accomplish this simple activity.

48. Unfortunately, Defendant Richler entered the information incorrectly for the routing numbers, either intentionally, recklessly, or negligently, even though Houck was on the phone with him giving him the proper instructions.

49. Due to Defendant Richler's conduct, the electronic transfer(s) of funds of approximately one million two hundred thousand dollars ($1,200,000) did not reach the intended recipient.

50. The error was only realized on June 7, 2024, when the funds were returned to Impact.

51. Gray Harbor's account with Impact was flagged for fraud as a result of the incorrect funds transfer which resulted in a return of funds.

52. Upon realization of Defendant Richler's improper actions, Houck telephoned Defendant Richler and notified him that he had entered the incorrect routing number. Defendant Richler asked Houck, "What do you want from me? Next time don't let the guy who doesn't do billing do the billing."

53. Upon realization of Defendant Richler's improper actions, Gray Harbor attempted to reverse the transaction. Unfortunately, these efforts were unsuccessful.

54. In June 2024, in order to restore access to its Impact account, Plaintiff Gray Harbor was forced to enter into a settlement pursuant to an assignment agreement whereby payment was made to Gateway Financial for a sum far in excess of the original amount due, by virtue of penalties, late fees, interest, and other related charges.

55. Defendants' error directly caused Plaintiff Gray Harbor to be unable to pay its advertising partners their monthly revenues due as per the existing contracts which were on net-thirty day and net-sixty day terms.

56. Had Defendant Richler performed this basic task properly, Plaintiff Gray Harbor could have successfully made payments to its advertising partners and continued successful operations.

57. Due to the financial disaster and related fallout caused by Richler, Plaintiff Houck engaged in discussions with various entities to sell the valuable business.

58. Plaintiffs discussed a sale to Aragon Advertising in June 2024.

59. Plaintiffs also discussed a sale to Defendant Tyler Eeds in this time frame.

60. Upon discovery of these development, Defendant Richler begged Houck to sell Gray Harbor to him.

61. Houck and Richler discussed terms and conditions and moved further along the process, knowing that the approval of Capital One was necessary.

62. In his proposed transition plan, Defendant Richler offered to carry certain debts to Gray Harbor partners, namely Wizco Media and Caerus Media, and demonstrated how the endeavor would be profitable for him.

63. On Friday, July 5, 2024, Capital One represented to Plaintiffs that they fully supported Defendant Richler taking over pursuant to a sale.

64. In response, Defendant Richler stated he was going to send a formal purchase proposal to Gray Harbor.

65. On Monday, July 8, 2024, Houck and Defendant Richler held a telephone meeting with Capital One.

66. Following the meeting that day, Defendant Richler independently met with Capital One by Zoom, unbeknownst to Plaintiffs.

67. On July 9, 2024, Defendant Richler again communicated with Capital One indicating that he was pausing the publishers and was being vague with them until he communicated further with Capital One "about messaging and next steps".

68. On July 10, 2024, Capital One formally cancelled its contract with Plaintiff Gray Harbor in writing.

69. On July 12, 2024, Defendant Richler wrongfully requested that the Search Frenzy domain and website be turned over to him, under the guise that he thinks that Houck does not care.

70. On July 17, 2024, Defendant Richler submitted his resignation via text message to Gray Harbor.

71. During the negotiations and prior to his resignation, Defendant Richler was communicating with Gray Harbor clients, partners, and misrepresented the reasons for the business being unable to pay, leading them to believe that Houck was embezzling funds.

72. Further, Defendants even sought to have Gray Harbor's clients and partners work directly with Richler and his entities, bypassing Gray Harbor, prior to Richler's resignation as Chief Operating Officer.  A true and correct copy of Slack messages between Richler and Plaintiffs' employee is attached hereto as Exhibit F.

73. Prior to his resignation, Defendant Richler also misrepresented to Gray Harbor staff that the reason for the business difficulties was mismanagement by Houck.  *See* Exhibit F.

74. In July 2024, Plaintiffs were informed by Wizco Media that Defendant Richler made numerous unauthorized disclosures of Gray Harbor's confidential financial information prior to his resignation as Chief Operating Officer, including detailed revenues and expenditures. A true and correct copy of the email from Wizco Media is attached hereto as Exhibit E.

75. Following his resignation, Defendant Richler also retained valuable confidential and proprietary information belonging to Plaintiffs without authorization.

76. In combination with his misrepresentations, Defendant Richler leveraged the unauthorized disclosures and unlawfully retained confidential information to unlawfully compete with Gray Harbor and steal Gray Harbor's clients and partners.

77. Upon information and belief, Defendant Richler also stole at least one client from his former employer, Avanquest, and brought with him to Gray Harbor. This client was Caerus Media, which is owned by Defendant Tyler Eeds.

78. Immediately following his resignation as Chief Operating Officer, Defendant Richler worked with Prime Digital Ads to unlawfully enter into a contract with Capital One Shopping to essentially operate as "Gray Harbor 2.0", using Plaintiffs' corporate assets, confidential information, and customer relationships, without any compensation whatsoever.

79. Immediately following his resignation as Chief Operating Officer, Defendant Richler also worked with Prime Digital Ads to improperly enter into contracts with Gray Harbor's partners including but not limited to Caerus Media and Wizco Media to essentially perform as "Gray Harbor 2.0".

80. In October 2024, Defendant Richler informed Houck that he had "opened up his own shop" with his brother-in-law.

81. Defendant Richler also informed Houck that he had "to do gymnastics" to get paid – namely, he had to set up a US based company.

82. Houck confirmed this information by looking at Richler's LinkedIn page where he listed himself as the Founder of Prime Digital Ads. Defendant Richler's LinkedIn page from October 8, 2024, identifies him as the Founder of Prime Digital Ads, along with the

statement that "At Prime Digital Ads, our mission is to help your business grow by connecting you with the…", which exactly matches the language on Prime Digital Ads' website.  A true and correct copy is attached hereto as Exhibit G.

83. Defendant Richler's LinkedIn page from November 18, 2024, identifies him as the "Head of Business Development" for Prime Digital Ads from August 2024 through present.  A true and correct copy is attached hereto as Exhibit C.

84. Richler hired Gray Harbor's former developer, Jim Bartek on July 17, 2024.  Richler provided false information to Mr. Bartek as to what happened to Gray Harbor while also soliciting him.  *See* Exhibit F.

85. Mr. Bartek informed Houck that Richler told him that he was the owner of Prime Digital Ads.

86. Mr. Bartek informed Houck that he received paychecks for this work from the account of Prime Digital Ads.

87. Mr. Bartek also provided Plaintiffs with the account information and the setup in the Impact system such that Defendants could effectuate their fraudulent scheme.

88. Mr. Bartek resigned from his employment with Prime Digital Ads in October 2024 once he became aware of the fraud.

89. Plaintiffs were bound by a Nondisclosure Agreement with Capital One. Defendant Richler was also bound by the Capital One Nondisclosure Agreement from his service at Gray Harbor.

90. The confidentiality requirements of the Capital One Nondisclosure Agreement survive for two years following the expiration or termination of the underlying agreement, and indefinitely for trade secrets.  *See* Exhibit A.

91. At no point did Plaintiffs ever provide written consent to Defendant(s) for the waiver of confidentiality or any transfer of any ownership rights to the confidential information.

92. Defendants are also bound by the nondisclosure provisions of the Nondisclosure agreement with Capital One.

93. Defendants and Gray Harbor's former partners are in violation of this Nondisclosure Agreements.

94. Gray Harbor's former partners, such as Wizco Media and Caerus Media, chose not to seek payment from Capital One as intended beneficiaries in order to maintain their new arrangement of working with Defendants.

95. Unbeknownst to Plaintiffs at the time, Defendant Richler informed Wizco Media and Caerus Media that Plaintiffs were in possession of at least $800,000 that was set aside for the payment of income taxes.  Defendant also disclosed confidential detailed revenue information for a period of years.  *See* Exhibit E.

96. In and around July 2024, Gray Harbor's former partners, such as Wizco Media and Caerus Media, then used Richler's unauthorized financial disclosures in an attempt to extort payment from Plaintiffs based upon Richler's misrepresentations to threaten Houck with criminal liability for alleged embezzlement.

97. In August 2024, Defendant Richler, using his superior knowledge and position of trust, coerced Plaintiffs into making payments of approximately $800,000 to Wizco Media and Caerus Media on the basis of existing contractual obligations.  He constantly bullied Houck that he had to pay these entities, telling him that he did not have a choice because of the terms of the contracts..

98. Defendant Richler also instructed Houck to make these payments from his personal funds in case Gray Harbor filed for bankruptcy.

99. The payment from personal funds is now being held against Houck personally in the case with Caerus Media.

100. Despite his resignation in July 2024, Plaintiffs still placed enormous trust in Defendant Richler and relied on his representations and counsel. Plaintiffs believed that Defendant Richler was acting in accordance with his duties. Obviously, Plaintiffs were unaware that Defendant Richler were working with their former partners and clients at this time.

101. Under duress, Plaintiffs made payments to these parties in response to these threats.

102. Defendant Richler's representations were false as there were no written contracts with Wizco Media and Caerus Media whatsoever, let alone ones that claimed personal guarantees on behalf of Houck.

103. Plaintiffs did not learn of the absence of written contracts until they were sued by Caerus Media in 2025.

104. Plaintiffs would have never made these payments to Wizco Media and Caerus Media had they been aware of the absence of written contracts.

105. Defendant Richler was aware that these funds were being set aside for the payment of income taxes while he engaged in this coercion.

106. Plaintiffs are presently facing IRS garnishments for the non-payment of taxes.

107. This fraudulent activity also sought to ensure that Plaintiffs would be unable to compete or even have the means to fight back against Defendants by leaving them penniless.

108.    After Defendants entered into the agreement with Capital One, Defendants were able to essentially blacklist Plaintiffs from any further business with Capital One based on their misrepresentations.

109.    When Plaintiffs tried to offer new clients to Capital One, they were directed to refer them to Defendants.

110.    When Plaintiffs sought to sell their client list, Capital One informed them such action would constitute a violation of the Nondisclosure Agreement.

111.    Prime Digital Ads is currently using the same exact advertising funnel created by Gray Harbor in its work with Capital One, which is confidential information including but not limited to trade secrets, technology, business methods, relationships, while working with Gray Harbor's former clients and partners.

112.    At no point did Plaintiffs relinquish any ownership interest in their assets or waive any protection for their confidential information or customer relationships.

113.    Upon information and belief, in order to avoid detection, Defendant Prime Digital Ads has been operating its business using Impact accounts belonging to Wizco Media and Careus Media.

114.    Prime Digital Ads has improperly earned millions of dollars through his misuse of Plaintiffs' assets.

115.    Through Prime Digital Ads, Defendants Richler, Tyler Eeds, and Sara Eeds have profited from the fraud perpetrated against Defendants.

116.    From May 2022 through July 2024, Plaintiff Gray Harbor generated revenue of almost twenty-one million dollars ($21,000,0000).

117.    During this time period, Plaintiff Gray Harbor generated net profits of approximately four million five hundred thousand dollars ($4,500,000).

118.    During this time period, Defendants Snowy Owl and Richler were paid more than one million five hundred thousand dollars ($1,500,000).

119.    Defendants Snowy Owl, Prime Digital Ads, and Richler were served with a request for an amicable resolution and an evidence preservation letter on October 21, 2024.  A true and correct copy is attached hereto as Exhibit H.

120.    This letter also directed Defendants to cease conducting business with Gray Harbor's clients and partners.

121.    On November 18, 2024, Counsel for Richler and Snowy Owl, Geoffrey F. Sasso, responded in writing, falsely claiming that "Mr. Richler has never served as the Chief Operating Officer of GHD."  A copy of the letter is attached hereto as Exhibit I.

122.    This letter also improperly threatened sanctions pursuant to New Jersey Rule 1:4-8 against Counsel for Plaintiffs.

123.    Defendant Richler's email signature on his Gray Harbor email account identifies him as the Chief Operating Officer.  *See* Exhibit B.

124.    Defendant Richler's LinkedIn page identifies him as the Chief Operating Officer of Gray Harbor.  *See* Exhibits C and G.

125.    A true and correct copy of a contract executed by Defendant Richler as Chief Operating Officer of Gray Harbor is attached hereto as Exhibit D.

126.    Although the response letter from Attorney Sasso dated November 18, 2024, contained very strong denials and threats of seeking sanctions, the letter conspicuously contained no denial of any affiliation of Richler with Prime Digital Ads.

127.    Defendant Impact has been formally placed on notice as of January 23, 2025.

128.    The payments from Capital One are only issued once per month through Impact.

129.    Payments are then made from Impact to the publishers for their share of the commissions, usually on a net-thirty or a net-sixty basis.

130.    Plaintiff Gray Harbor is facing numerous lawsuits in federal and state courts seeking unpaid commissions including but not limited to Aragon Advertising, LLC, RDM Capital Funding LLC d/b/a Fintap, Caerus Media, and Itria Ventures LLC.

131.    In addition, Plaintiff Brett Houck is facing personal liability in many of these cases based on contracts fraudulently executed by Defendant Richler via forgery that contained personal guarantees.

132.    The Stone Harbor Police Department is investigating Defendant Richler's criminal conduct under Case Number 25-02202.

133.    Plaintiffs filed suit in the Superior Court of New Jersey of Cape May County on May 31, 2025.

134.    The Honorable Judge Pickering of the Superior Court of New Jersey entered an Order granting Temporary Restraints on June 27, 2025.  A true and correct copy is attached hereto as Exhibit J.

135.    Defendants removed the matter to the United States Court for the District of New Jersey on July 22, 2025.

**COUNT I – BREACH OF FIDUCIARY DUTIES AGAINST RICHLER**

136.    Plaintiffs incorporate by reference their averments in Paragraphs 1 through 135 as if same were set forth at length herein.

137.    The New Jersey Revised Uniform Limited Liability Company Act (NJRULLCA) provides that managers of an LLC owe duties of loyalty and duties of care to the LLC and its members.  N.J.S.A. 42:2C-39.

138.    The New Jersey Revised Uniform Limited Liability Company Act (NJRULLCA) specifically identifies the duties comprising the duty of loyalty for a manager of an LLC. Under the duty of loyalty, a manager must account to the LLC for any profits derived from conducting the business of the LLC and dissolving the LLC; using the LLC's property; and appropriating business opportunities of the LLC.  N.J.S.A. 42:2C-11(f).  Additionally, a member or manager must refrain from engaging in self-dealing and competing with the LLC.

139.    The New Jersey Revised Uniform Limited Liability Company Act (NJRULLCA) specifically identifies the duties comprising the duty of care for a manager of an LLC. N.J.S.A. 42:1A-24(b); N.J.S.A. 42:2A-3.

140.    Defendant Richler owed fiduciary duties to Plaintiff Gray Harbor and Plaintiff Houck as both a manager and as a person with unique and superior knowledge over the financial status of the LLC, its contractual obligations (particularly as they varied from the standard terms and conditions), and its assets.

141.    Defendant Richler was familiar with the assets of the LLC, including its confidential information, financial information, trade secrets, business models, valuable client and partner relationships, staff, and technology.

142.    As detailed above, Defendant Richler breached his fiduciary duties by multiple instances of forging execution of contracts, self-dealing, failing to accomplish the simple task of updating the payment information in the Impact system which led to the financial distress, conducting side business with Gray Harbor's clients and partners using Gray Harbor's assets,

making unauthorized financial disclosures, violating nondisclosure agreements, improperly retaining corporate property and confidential information, and ultimately stealing the assets of the LLC under the pretense of acquiring them via purchase and engaging with Gray Harbor's partners and clients for the Capital One contract.  Defendant Richler then converted the proceeds from these assets to the control of Prime Digital Ads.  Defendant Richler actively concealed his actions from the LLC and Houck for months; Plaintiffs only learned of the malfeasance via Richler's accidental disclosure via phone in October 2024.  Richler actively concealed his true intentions in engaging in discussions to purchase the LLC while spreading inappropriate falsehoods about Houck's mismanagement being the reason for the LLC's failure to make payments.  Following his resignation, Richler continued to use his position of trust and influence to improperly coerce Plaintiffs into making payments of over $800,000 to Wizco Media and Caerus Media in August 2024 by falsely claiming that these were contractual obligations of Gray Harbor, while he was secretly working with these former clients and partners of Plaintiff.

143.    Defendant Richler's breaches of fiduciary duty constitute willful neglect, willful default, fraud, dishonesty, and disregard of duty.

144.    At no time did Plaintiffs authorize or ratify any specific acts or transactions which would violate Defendants' duties of loyalty, including the disclosure of confidential information.

145.    Plaintiff Gray Harbor's operating agreement does not allow managers to compete with the LLC.

146.    At all relevant times, if Plaintiffs were aware of the breaches of fiduciary duty by Defendant Richler, could have and would have stopped those breaches by taking proper action including consulting an attorney and by terminating Richler's status as a manager.

147.    Plaintiffs have suffered serious financial harm as a result of the breaches of the fiduciary duties of Defendant.

148.    The breaches of the fiduciary duties by Defendant are the direct and proximate cause of the damages suffered by Plaintiffs.

149.    Defendant is not entitled to the protection of the Business Judgment Rule as he has engaged in fraud, self-dealing, and unconscionable conduct.

WHEREFORE Plaintiffs directly and derivatively respectfully request this Honorable Court to enter judgment in their favor and against Defendant Richler for compensatory damages for their financial losses, punitive damages, interest, costs, fees, and any other relief this Honorable Court deems just and proper.

## COUNT II – FRAUD AGAINST RICHLER

150.    Plaintiffs incorporate by reference their averments in Paragraphs 1 through 149 as if same were set forth at length herein.

151.    In New Jersey, the elements of common-law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 148 N.J. 582, 610 (N.J. 1997)

152.    As described in greater detail above, Defendant Richler was the mastermind of a massive multi-million dollar fraud, planning, controlling, and directing every aspect of the fraud.

153.    Defendant Richler made multiple misrepresentations to Plaintiffs about the status of its contractual obligations as a result of his forged executions including significant variations from the standard terms and conditions and some imposing a personal guarantee upon

Plaintiff Houck without his knowledge, consent, or ratification.  Defendant Richler also made false representations about contractual obligations that did not exist.

154.    Defendant Richler made multiple misrepresentations through omission by not disclosing, among other facts, the reduced commissions to Plaintiffs.

155.    Defendant Richler made unauthorized disclosures of confidential information and misrepresentations implying that Houck embezzled the funds in order to leverage Gray Harbor's former clients and partners to conduct business with him.

156.    As a result of the fraud, Prime Digital Ads was able to take control of the assets of Plaintiff Gray Harbor and their customer relationships, and saddle Plaintiff Brett Houck with the enormous liabilities.

157.    Absent the fraud, Defendant Richler and his partners would not have been able to surreptitiously steal the assets of the LLC.

158.    Defendant Richler was in a position of unique and superior knowledge regarding the financial status of Plaintiff Gray Harbor, and the manner in which he was able to conceal the true nature of the operations of the LLC and the obligations thereupon, and the picture of the health of the LLC was the product of fraud.

159.    As expected and anticipated by Richler, Plaintiffs were not alerted to the fraud until they learned by accidental disclosure in October 2024 that Richler had been conducting business with Plaintiff Gray Harbor's clients under the Prime Digital Ads banner.

160.    Plaintiffs relied upon Richler's fraudulent portrayals of the health of the company and more critically, Defendant Richler's concealment of the true facts.  In placing their continued trust in Defendant Richler, Plaintiffs relied to their detriment on his representations as well as

the lack of information on the further impairment Defendant Richler had caused without Plaintiffs' knowledge or approval or the damage he had caused to their business.

161.    Plaintiffs were harmed by Richler's unauthorized disclosure of confidential information, particularly financial information, combined with Richler's false statements which led Gray Harbor's former partners to work with Prime Digital Ads.

162.    Plaintiffs were also harmed by Defendant Richler using his position of trust and influence to improperly coerce Plaintiffs into making payments of over $800,000 to Wizco Media and Caerus Media by falsely claiming that these were contractual obligations of Gray Harbor with personal guarantees of Houck, while he was secretly working with these former clients and partners of Plaintiff in August 2024.

163.    As a result of the fraud perpetrated by Defendant Richler, Plaintiffs have suffered financial harm in an amount to be determined at time of trial.

WHEREFORE Plaintiffs directly and derivatively respectfully request this Honorable Court to enter judgment in their favor and against Defendant Richler for compensatory damages for their financial losses, punitive damages, interest, costs, fees, and any other relief this Honorable Court deems just and proper.

## COUNT III – TORTIOUS INTERFERENCE WITH CONTRACTS AGAINST PRIME DIGITAL ADS, RICHLER, and TYLER EEDS

164.    Plaintiffs incorporate by reference their averments in Paragraphs 1 through 163 as if same were set forth at length herein.

165.    The claim of tortious interference with business contracts requires the following elements: (1) the existence of a contractual relationship; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the

absence of a privilege of justification for such interference; and (4) damages resulting from the defendant's conduct.

166. Prior to Defendants' malfeasance, Plaintiff Gray Harbor had a very lucrative contract with Capital One Shopping to provide digital advertising services.

167. Prior to Defendants' malfeasance, Plaintiff Gray Harbor had numerous contracts with digital advertising partners including but not limited to Aragon Advertising, Wizco Media, Caerus Media, and many others.

168. Defendants intended to harm Plaintiffs by usurping its existing contractual relationships.

169. Defendants caused harm by improperly disclosing Plaintiffs' confidential information as well as misrepresenting the reasons for the non-payment to partners.

170. Defendants engaged in this interference while Defendant Richler was still actively serving as the Chief Operating Officer of Gray Harbor, including immediately following the cancellation of the Capital One contract, and thereafter.

171. Defendant Tyler Eeds disclosed to Houck in early 2025 that he was involved in conversations with Capital One at the time and informed him that "he doesn't know what happened that weekend." Further, Tyler Eeds was presumably involved in the "gymnastics" that Richler had to go through in order to work with Capital One.

172. Defendants had no privilege or justification for interfering with Plaintiff Gray Harbor's relationship with Capital One Shopping or its digital advertising partners.

173. Plaintiffs have suffered severe financial damages as a result of Defendants' improper interference.

174. In addition to losing its opportunities under ongoing valid contracts, Plaintiffs were also harmed with respect to its prospective contracts with other digital advertising partners.

Defendants' actions have had very serious implications for Plaintiffs' business by sabotaging its relationships with these vitally important businesses in its industry and unjustly tarnishing its reputation.

WHEREFORE Plaintiffs directly and derivatively respectfully request this Honorable Court to enter judgment in their favor and against Defendants Richler, Tyler Eeds, and Prime Digital Ads for compensatory damages for their financial losses, punitive damages, attorney's fees, interest, costs, fees, and any other relief this Honorable Court deems just and proper.

## COUNT IV – CIVIL THEFT AGAINST RICHLER

175.   Plaintiffs incorporate by reference their averments in Paragraphs 1 through 174 as if same were set forth at length herein.

176.   Defendant converted and stole the assets of the LLC and improperly retained company property and confidential information without any authority whatsoever.

177.   Defendant Richler took affirmative steps to conceal his theft, including misrepresenting the reasons for Gray Harbor's default.

178.   Plaintiffs hold a proprietary interest in the assets stolen from the LLC by Richler and the income generated thereupon.

179.   Plaintiffs have been damaged as a result of Defendant's theft.

180.   Pursuant to NJ Rev Stat § 2C:20-20, Plaintiffs are entitled to threefold damages they have sustained, along with attorney's fees, and costs of investigation and litigation.

WHEREFORE Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendant Richler for compensatory damages for the financial losses, treble damages, attorney fees, interest, costs, fees, and any other relief this Honorable Court deems just and proper.

## COUNT V – CIVIL THEFT AGAINST PRIME DIGITAL ADS

181. Plaintiffs incorporate by reference their averments in Paragraphs 1 through 180 as if same were set forth at length herein.

182. Defendant Prime Digital Ads has received possession of the protected confidential information stolen by Richler.

183. Plaintiffs hold a proprietary interest in the stolen assets and the income generated thereupon.

184. Plaintiffs have been damaged as a result of Defendant's theft.

185. Pursuant to NJ Rev Stat § 2C:20-20, Plaintiffs are entitled to threefold damages they have sustained, along with attorney's fees, and costs of investigation and litigation.

WHEREFORE Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendant Prime Digital Ads for compensatory damages for the financial losses, treble damages, attorney fees, interest, costs, fees, and any other relief this Honorable Court deems just and proper.

## COUNT VI – CONVERSION AGAINST RICHLER

186. Plaintiffs plead this count in the alternative.

187. Plaintiffs incorporate by reference their averments in Paragraphs 1 through 185 as if same were set forth at length herein.

188. Defendant Richler converted and stole the LLC assets without having any authority whatsoever to take the assets he took.

189. Defendant Richler took affirmative steps to conceal his theft.

190. Plaintiffs hold a proprietary interest in the assets stolen by Richler and the income generated thereupon.

191.    Plaintiffs have been damaged as a result of Defendant Richler's conversion of their property.

WHEREFORE Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendant Richler for compensatory damages for the financial losses, interest, costs, fees, and any other relief this Honorable Court deems just and proper.

## COUNT VII – NEGLIGENCE AGAINST RICHLER

192.    Plaintiffs incorporate by reference their averments contained in Paragraphs 1 through 191 as if same were set forth at length herein.

193.    Plaintiffs plead this count in the alternative.

194.    At a minimum, as the Chief Operating Officer of Plaintiff Gray Harbor, Defendant Richler owed a duty to the LLC and its member to perform his duties in line with the appropriate standard of care.

195.    Defendant Richler breached this duty by improperly entering the payment information in the Impact system despite having the requisite skill and all of the necessary information to perform the task.

196.    Defendant Richler also breached this duty in many other ways as noted above, including but not limited to, forging execution of contracts, self-dealing, making unauthorized disclosures of confidential information, and stealing the assets of the company.

197.    Plaintiffs have suffered damages as a result of Richler's negligence.

198.    Richler's negligence is the direct and proximate cause of Plaintiffs' damages.

WHEREFORE Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendant Richler for compensatory damages for the financial losses, interest, costs, fees, and any other relief this Honorable Court deems just and proper.

## COUNT VIII – DEFAMATION AGAINST RICHLER

199.    Plaintiffs incorporate by reference their averments contained in Paragraphs 1 through 198 as if same were set forth at length herein.

200.    Defendant Richler made numerous false statements regarding Plaintiff Gray Harbor and Plaintiff Brett Houck, including but not limited to falsely claiming Houck's mismanagement was the reason for the LLC's inability to pay its partners.

201.    Defendant Richler leveraged his defamatory statements to steal Plaintiffs' clients, customers, and partners.

202.    Gray Harbor's former partners used the improperly disclosed confidential information received from Defendant Richler to threaten Houck with criminal liability in an attempt to extort money from Plaintiffs.

203.    Defendant Richer made these statements willfully and / or with a reckless disregard for the truth.

204.    At a minimum, Defendant Richler made these statements negligently.

205.    Defendant Richler has communicated and published these false statements to numerous parties, including Gray Harbor's former clients who are now clients Defendant Richler and / or Prime Digital Ads as well as Gray Harbor's employees.  *See* Exhibit F.

206.    Plaintiff Gray Harbor has suffered serious reputational harm as a result of Richler's false statements.

207.    Plaintiff Brett Houck has suffered serious reputational harm as a result of Richler's false statements.

208.    Plaintiffs have lost numerous lucrative business opportunities due to Defendant's false statements, including the opportunity to work with Capital One.

WHEREFORE Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendant Richler for compensatory damages for their financial losses, punitive damages, interest, costs, fees, and any other relief this Honorable Court deems just and proper.

### COUNT IX – PIERCING THE CORPORATE VEIL OF PRIME DIGITAL ADS

209.    Plaintiffs incorporate by reference their averments contained in Paragraphs 1 through 208 as if same were set forth at length herein.

210.    Upon representation of Counsel, Defendants Tyler Eeds and Sara Eeds possess ownership interest in Defendant Prime Digital Ads.

211.    Defendant Prime Digital Ads is the corporate vehicle being used to commit fraud and defeat the ends of justice by using stolen confidential information that is protected by the Nondisclosure Agreement.

212.    "The purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or to otherwise evade the law."  State Dept. of Env. Protection v. Ventron Corp., 94 N.J. 473, 500 (1983).

213.    Specifically, Defendant Prime Digital Ads is a necessary party to perpetuate a fraud upon Plaintiffs' business, and then ultimately stole the assets of the business.

214.    Any income generated by this business is solely due to the fraud and other unlawful activities of Defendant Prime Digital Ads.

215.    As a result, Defendants Tyler Eeds and Sara Eeds are individually liable to the Plaintiffs for an amount to be determined at trial.

WHEREFORE Plaintiffs respectfully request this Honorable Court to enter judgment in their favor and against Defendants Tyler Eeds and Sara Eeds individually for compensatory damages for the financial losses, punitive damages, interest, attorney's fees, costs, fees, and any other relief this Honorable Court deems just and proper.

## COUNT X – INJUNCTIVE RELIEF AGAINST PRIME DIGITAL ADS

216.   Plaintiffs incorporate by reference their averments contained in Paragraphs 1 through 215 as if same were set forth at length herein.

217.   New Jersey Rule 4:52 governs the procedure related to injunctive relief.

218.   The standard for preliminary injunctive relief is that the moving party must establish: (1) a likelihood of success on the merits; (2) irreparable harm; (3) a showing that on balance the harm to the moving party is greater than the harm to the party to be restrained; and (4) the public interest will not be harmed. Crowe v. DeGioia, 90 N.J. 126, 132-134 (1982).

219.   Plaintiffs' right to relief in this matter is clear, and the wrong is manifest.

220.   Plaintiffs seek to protect their legitimate interests in the ownership and protection of their proprietary and confidential information and their customer relationships.

221.   The Capital One Nondisclosure Agreement broadly protects this confidential information. The Agreement provides "Forms of Confidential Information include, without limitation: (a) Confidential Information transmitted, disclosed, or made available in written, oral, magnetic, or any other medium; (b) all copies and reproductions, in whole or in part, of Confidential Information; and (c) all summaries, analyses, compilations, studies, notes, or other records which contain, reflect, or are generated from Confidential Information. Confidential Information does not include information that Recipient can demonstrate: (i) was, at the time of disclosure to Recipient, in the public domain or, after disclosure to Recipient, has become

part of the public domain through no act or omission of Recipient; (ii) is or was developed independently by Recipient without use of or reference or access to Confidential Information; (iii) was in the possession of Recipient, without confidentiality restrictions, at the time of disclosure to Recipient hereunder; or (iv) is lawfully and independently provided to Recipient by a third party who, to the knowledge of Recipient, is not subject to an obligation of confidentiality or otherwise prohibited from disclosing or transmitting such information." *See* Exhibit A.

222. The Capital One Nondisclosure Agreement provides that "Recipient acknowledges that all Confidential Information of Discloser is proprietary and of competitive value, and in many instances, trade secrets. Recipient agrees that because of the unique nature of such Confidential Information, any breach of the Agreement would cause Discloser irreparable harm, and money damages and other remedies available at law in the event of a breach would not be adequate to compensate Discloser for any such breach. Accordingly, Recipient agrees that Discloser shall be entitled, without the requirement of posting a bond or other security, to equitable relief, including, without limitation, injunctive relief, and specific performance, as a remedy for any such breach. Such relief shall be in addition to, and not in lieu of, all other remedies available to Discloser, whether under the Agreement, at law or in equity." *See* Exhibit A.

223. The Nondisclosure Agreement provides that "any Confidential Information of Discloser, in whatever form, is and shall be the sole property of Discloser, and Discloser shall retain and own all right, title and interest in and to any Confidential Information, including all intellectual property and proprietary rights therein, whether currently existing or arising in the future." *See* Exhibit A.

224.    In addition to the relief afforded by the Nondisclosure Agreement, Plaintiffs have a substantial likelihood of success on the merits, particularly as there is an ongoing police investigation into Richler's conduct and irrefutable documentary proof of numerous instances of his misconduct, including breaches of fiduciary duties, as well as the undeniable fact that Prime Digital Ads is generating significant income through illegal means with Plaintiffs' former clients and partners.

225.    There is no adequate remedy at law.

226.    Prime Digital Ads' conduct threatens the viability of Plaintiffs' business, particularly when it employs Plaintiff's former Chief Operating Officer who has looted the assets and benefited from the stolen confidential information.

227.    There is a serious risk to the future viability of Plaintiffs' business.  The loss of goodwill is enormous.

228.    Additionally, there are many lawsuits pending against Plaintiffs related to Defendants' malfeasance.

229.    The risk of Plaintiffs requiring bankruptcy protection is real.

230.    Further, Plaintiffs are facing IRS garnishments after Defendant Richler coerced them into making payments of approximately $800,000 to Wizco Media and Caerus Media in August 2024, using the funds set aside for the taxes, based on his knowingly false statement about contractual obligations.

231.    The harm to Plaintiffs is far greater if the preliminary injunction is denied than it would be for Defendants if the preliminary injunction were granted, particularly as Defendants have been earning six figure incomes each month since they wrongfully stole Plaintiffs' corporate assets.

232.    Issuance of an injunction will not substantially harm other interested parties in the proceedings.  If anything, Gray Harbor's creditors will be afforded significant benefits.

233.    The relief requested will not adversely affect the public interest.

234.    "'The power to impose restraints pending the disposition of a claim on its merits is flexible; it should be exercised whenever necessary to subserve the ends of justice, and that justice is not served if the subject-matter of the litigation is destroyed or substantially impaired during the pendency of the suit." Waste Mgmt. of N.J., Inc. v. Morris Cnty. Mun. Utils. Auth., 433 N.J. Super. 445, (App. Div., 2013) (internal quotation marks omitted).

235.    An injunction seeks to maintain the status quo to the extent possible.

WHEREFORE Plaintiffs respectfully request this Honorable Court to order Defendant Prime Digital Ads (or any individual associated therewith) to immediately cease operating the funnel with Capital One, working with Gray Harbor's former clients and partners, and using, selling, licensing, or otherwise transferring in any way the confidential information rightly belonging to Gray Harbor, along with any other relief this Honorable Court deems just and proper.

## COUNT XI – INJUNCTIVE RELIEF AGAINST IMPACT

236.    Plaintiffs incorporate by reference their averments contained in Paragraphs 1 through 235 as if same were set forth at length herein.

237.    Defendant Impact Tech, Inc. is the bank holding the funds through which Defendant Prime Digital Ads operate its business with Capital One using Plaintiffs' wrongfully taken assets.

238.    Defendant Impact Tech, Inc. was formally notified in writing of the underlying fraud on January 23, 2025, pursuant to California Commercial Code Section 1202.

239.    The account names and numbers have been provided to Impact in writing.

240.    As all payments from Capital One must go through Impact, and are paid only once per month, this restraint is reasonably calculated to abate the offending activity and preserve the possibility of relief.

241.    An injunction is necessary to preserve the possibility of effective final relief, including, but not limited to, rescission or reformation of contracts, restitution, and the disgorgement of ill-gotten monies – particularly given that Defendant Richler resides in Canada.

242.    Plaintiffs will suffer irreparable harm if the funds in question are allowed to be disbursed, particularly as Defendant Richler resides in Canada.

243.    It is unknown whether or not Impact complied with the Order of the Superior Court of New Jersey imposing Temporary Restraints.

WHEREFORE Plaintiffs respectfully request this Honorable Court to order Defendant Impact Tech, Inc. to freeze the funds in question until the conclusion of this litigation along with any other relief this Honorable Court deems just and proper.

Respectfully submitted by:

Date: 9/26/25

_____/s/ *Musa A. Jan*_____
Musa A. Jan, Esquire
Attorney for Plaintiffs